Okay, the next case called for hearing is 511-0415, People of the State of Illinois v. James Gaddis. Mr. Drew and Ms. McCormick. Mr. Drew? Mr. Drew? Good afternoon, ma'am. Please sit forward. Counsel, my name is Brian Drew, and I represent the defendant appellant, James Gaddis, in this case. The factual background, briefly, is that James Gaddis was charged with robbing a bank, in essence, the formal criminal charge, and being on robbery. And he was a police officer at the time in the Colorado Police Department. Upon being arrested or just brought into custody, he gave a statement stating that his co-defendant, the co-conspirator in the armed robbery, had in fact threatened his life and threatened the life of his family in order to compel him to engage in conduct, being the armed robbery of the bank in Carbondale, Illinois. At trial, evidence was presented as it related to the propulsion defense. The trial court deemed sufficient evidence had been presented to, in fact, allow the defendant to present the affirmative defense of propulsion. It was, in fact, presented. And then at the close of the case, during the jury instruction portion, is what leads us here to the appeal as we stand today, and that is that the defendant submitted the I.P.I. instruction for the defense of compulsion. And there is an I.P.I. The definitional. The definitional version of it for the jury to be given in consideration for the affirmative defense of compulsion. The, you know, can't tell from the brief, but I take it, you know, the defense of compulsion was worked into as well the elements of the offense and what the state had to prove that he was not compelled and so forth. Correct, Your Honor. It was part of the elements of the crime the state had proved beyond reasonable doubt that he was not in fact compelled. It was the issues as well as the necessary elements. The state, the prosecution, asked for an additional language to be added to the I.P.I. instruction. And the prosecution asked that the following statement be added to the I.P.I. instruction, and that is that the defense of compulsion is not available to one who passes up an opportunity to withdraw from the criminal enterprise. Is that an accurate statement of the law? Well, I think it is an accurate statement as to the law as to what the court is to consider in determining whether or not a defendant is allowed to present to the jury his affirmative defense of compulsion. But I do not believe this is an accurate depiction as to what the I.P.I. instruction should be for the definition of compulsion to be presented to a jury in an actual jury instruction. I believe that is something the court must determine prior, because in this case it is not, where the defendant could present absolutely no evidence and he simply gets to walk in and go, well, I was compelled to do this. And the judge says, okay, great. Well, then we'll just, if you want to throw compulsion in, we'll throw it in. That's great. That's not the case. A prerequisite to that is the sufficient grounds in the court to make the legal determination that there is sufficient evidence to do it. And in the midst of that evidence, one of the things the court can consider is that fact. Now, I think the way it's presented in the I.P.I. instruction. Certainly the jury can consider that as well in determining whether or not he was compelled, whether he passed up opportunities to. The jury can look at all the factors that relate to it of whether or not he was in fact compelled. But I think the way it was written is not available to one who passes up an opportunity to withdraw from the criminal enterprise. I think the actual language of it, though, doesn't state that. I think it's differently and certainly more artfully done in the court cases that talk about an individual who does that. And I know in the state's brief, they cite cases where, in fact, in other districts, mainly the first district, that there has been allowed additions to it. But it was really defining the word imminent further, which I would argue they probably should have been allowed, I believe, to add that. The word imminent means the word imminent. I think it has a definition. It's for the jury to determine. But in those two cases, the appellate court upheld adding that to define a word imminent. But in this case, the additional language doesn't define anything in the definition. It doesn't take a word that might have some concern. It added a whole other element to the defense of compulsion that simply doesn't exist. Well, suppose the state would have offered this just in a separate instruction, non-IPI. Well, I think you mean if it didn't exist. It didn't have to be included in the definitional instruction. I mean, the definitional instruction as it exists in IPI could have been given, and the state could have just offered it as a separate non-IPI saying this is an accurate statement of the law, and the judge could have read it right behind the definitional instruction like he did. Would that make any difference to your argument? Well, I don't think it would have made a difference because I don't think it would be a necessary instruction to the jury or a valid instruction to be given to the jury as a proper recitation of the law because I believe that is more of a determination by the court to determine whether or not you get the affirmative defense of compulsion. Once it is, the affirmative defense of compulsion is accurately defined and is clear, and this additional language in no way, shape, or form clarifies the actual definition of compulsion that's there or any word contained therein. This adds a whole new element to it, so I would argue that no, that would be improper to do as well because it adds an additional thing because now the defendant would have to show, well, I never had an opportunity to leave this criminal enterprise on top of just showing that he was compelled. He would have to do that in addition, and that's not the definition of it under the circumstances the way I read it. My point is you're not objecting to the fact that it was necessarily included in the definition instruction. You're objecting that it was included at all. Yes. Whether as a separate instruction or … I don't believe it should be included in any way, and certainly not in the definition section. I don't believe it would be properly included outside of that as a separate non-IPI instruction as well. And I know to the court several cases, and I don't belabor them as this court is well aware of them, concerning the Supreme Court's discussions of Illinois pattern jury instructions, that they put committees together. They went through them. They determined what the definition was that would accurately reflect the status of law and would accurately define the word compulsion. It was obviously simply saying to the jury, well, compel, compulsion. What does that mean? Well, the Illinois Supreme Court in the pattern jury instructions came up with that definition. It said here's what this compulsion, what the definition of compulsion is. It, in fact, has a very clear definition of what the defense is and what the elements are of that defense. Mr. Drew, when evidence was produced at trial about the opportunity to withdraw? Well, the prosecution asserted, I believe, that under the fact scenario that my client had the weapon, that therefore he has an ability to withdraw. That he, at one point in time, was dropped off in a rural area and was then retrieved by the hope of an individual fight at a later time prior to coming to the bank. And the state also alleges in the brief that they cite these facts, that, in fact, he, Mr. Gaddis, was the first individual to enter the bank, and he had a weapon at the time. Therefore, he could have simply locked the door or changed things. So they cite that there's all of his chances to remove himself from the criminal activity. And divided up the money and spent it. After the fact. But he's just charged with armed robbery at the time. We're talking about the affirmative defense of the charge of armed robbery. But after the fact, there was additional acts that took place that certainly were not beneficial to my client. Unfortunately, he didn't have legal counsel when he spoke to the police initially. That is to say, he gave certain statements. But I think, and I think we have to find, I think our view of what is valid as it relates to the destruction is as to what happened to the armed robbery. Now, what's the place after that? The crime's been committed. So I don't believe that that is fruitful in looking at, for the state to get this additional language. But what I would say is that the defense presented the argument that there was a direct threat by mutual fight at the time they met. That there was third party individuals involved. That they knew where Mr. Gaddis' children were, where his wife was in Georgia. And they also knew him. And that that threat was there. The threat wasn't necessarily from mutual fight. Now, whether or not that is a reasonable belief by Mr. Gaddis concerning the fact of going and committing an armed robbery at the bank was for the jury to decide as to whether or not it was. The jury did not believe that it was a reasonable or rational that that was the case. But this additional language alters the definition of compulsion and puts a further burden upon the defendant. And does it after the fact of the evidence being closed. And after closing arguments, prior closing arguments, but after the time evidence has been presented. Where the defendant now has an ability to say, well now you've added this additional burden to me of showing that I had no opportunity to withdraw from the criminal enterprise. But that is not what the law states. That is not what the definition is. Yet now you require me to do this when the evidence is closed. Which places the defendant in a different position, I think, in light of where we're at now with the new instruction as requested by the prosecution. Under the circumstances. And with the defendant's assertion that he was compelled not only by mutual fight. He wasn't the only threat that existed. That there were third party individuals unbeknownst to Mr. Gaddis. And he also in his statement as well as testifying said that an individual came to his door. A person he did not recognize. Asked some questions. Made an implied threat at the time concerning that they know where you are, know where you're at. That there was a co-conspirator with mutual fight to compel Mr. Gaddis to involve and engage in the armed robbery that he did ultimately engage in. So when that's the case, we have an outside party that my client believed had the additional threat. So that he was under surveillance. That his family was under surveillance. But most importantly, he was under surveillance and would be harmed by this. So I don't believe in essence, based on my client's statements and the evidence that was actually presented at trial. That there was any opportunity for him to withdraw from that. I don't believe it's proper to put that in even if the court was willing to consider it. Or even if it was an accurate reflection of the law. I don't believe there's adequate evidence to do that. We have to use conjecture and surmise and presume a lot of things in order to get to that point. Because we have to presume that there wasn't a third party out there who was waiting in the bushes, so to speak. For lack of a better description. Who if Jimmy Gaddis locked the door or walked out of that bank without robbing him. Wasn't going to shoot him and kill him. Wasn't going to harm him. We have to presume that. Because then that would be an ability. But my client, I believe in his statements of placing a third party involved in it. Put him in a position where he believed. Why do we have to presume that? There was no evidence presented. That there was somebody out there. You acknowledge that he went in with the gun himself and co-defended. Had no gun. That is correct. But my client stated that he was, that a threat was made to him prior to the armed robbery. That he would be harmed and that this third party individual was a part of this. And that was my client's understanding and belief at the time. I think it would be impossible to ever for a defendant then to present evidence. That you would have to catch the person waiting in a car in the parking lot next door. Or you would have had to have seen them. Or otherwise, I don't know how you would ever prove that there was another individual doing it. Unless you actually caught it. And that, and I think that's not what the defense of compulsion involves. And that's my argument here in that placing this added. And it really, I believe, is an added burden on the defendant. It's not just, it's not simply a case of saying well we're going to define further some words here. Like the word imminent. That's for certain jurors or certain juries depending on your education or what have you. The word imminent is a, could be a difficult word. You might not understand what imminent really means. What does that mean? And then a couple times in the first district they allowed a court because of the evidence that was presented to say, well we could, the jury could get really hung up on what imminent really means. So let's go ahead and define it further of what imminent means. Because imminent has a definition under the law and we can define it very clearly. But in this case we're not, we're not defining a word in the definition of compulsion. We're redefining compulsion. And we're adding an additional element that the defendant would have to show to overcome the fact that he's admitted I committed this crime. Because obviously to do an affirmative defense you have to say yeah, I did it. I did everything they will accuse me of doing. But I had a valid justification for it. And to show my valid justification I merely must show that I acted under the compulsion of threat or menace of the imminent infliction of death or great bodily harm. And if I reasonably believe the death or great bodily harm would be inflicted upon me if I did not perform the conduct with which I was charged. What if the instruction had said the word imminent is not available to one who passes up an opportunity to withdraw from the criminal enterprise? Is that any different? Well, but I don't think then imminent, imminent is a definition I believe of a threat, of what the threat exists. And I guess if you have an opportunity to walk away, I don't know that it would change the fact that the threat was still imminent. You just might have an opportunity to get out from under it. So I don't. At which point the defense of compulsion doesn't exist. I think it ceases to exist at that point. Right. Because I mean conceivably I don't see how. I mean if you say you have an opportunity to withdraw, I mean I don't know where you would ever have a scenario where you couldn't say. I mean basically the affirmative defense of compulsion of course would cease to exist because unless as you walked into the bank, that other individual had the gun to your head and followed you in the whole way. If he ever pulled the gun down, well then conceivably you could have turned and you're bigger. You could have overpowered him and got the gun. Well, wasn't his argument here though that he was also in fear of threat to his family? Family. So I mean why couldn't he argue, well, I had to do all that stuff because I thought they were watching my family. And so I, you know, so even with that additional definition the state gave, I mean that would be the argument, wouldn't it? Well, I don't believe it would be a bodily law argument. I think it would be because under the definition of it, it only says reasonably death or great bodily harm would be inflicted upon him. I mean so it's only as it relates to the defendant. I mean while he did state that his family, and I'd say I probably could counsel, I think had a brief biblical discussion beforehand. I think probably some arguments could be made that when two become married, two become one and the flesh become one and you see not one from the other. I don't want to delve down into that area if we're talking about the law, but I guess conceivably you could make an argument that he saw no distinction between himself and his wife. And therefore it falls under compulsion, but I wouldn't want to make that argument to the court as my only ability to get the defense of compulsion in because I don't believe legally the way the law is set up that that would fall under that definition and under the circumstances. So I think, and a little unusual for me I believe in this argument is there are some cases on it, but it's really kind of a factual, more of a factual argument I think as much as the law. Other than I think the Illinois Supreme Court with the Illinois Paternity Instructions are very clear. I mean I think take great caution before you start amending or modifying these rules. We've spent a great deal of time putting together and when you do it, prosecution especially on an affirmative defense of the defendant, be very careful because we have placed this forward. And in the instance of where you're defining the word further, I still don't think it's proper, but I could see where an argument could be made where we're just defining the word further. It doesn't change it. It's still the same thing. And if you properly define what eminent means as the Webster's Dictionary and you use smaller words and you're attempting to define it better, that's one thing. But in this case, we're not defining eminent. They say, as the prosecution, the jury got presented with the definition now of compulsion also says that the defendant has to show you that he didn't have an opportunity to withdraw from the criminal defense. And I don't think that's appropriate for the jury to determine. That's why the court – that's why you don't get to present affirmative defense is just because you feel like it. You can't just say, well, I want to present it. Well, there's no evidence. Well, I just want to. You have to submit to the court sufficient evidence. You have to have – and the court makes the determination if you've met that minimum threshold of some evidence. Because I can anticipate a scenario where you're accused of possibly selling alcohol to a minor or some far lesser offense or things, and the individual said – and the court hears the evidence and looks at it and says, well, I mean, the other person never really threatened you. They told you, I mean, I may hurt you if we do this or I'm going to get you. And the person wasn't one who was involved in the crime. You didn't know him to be in the court to make that determination that, you know what, you really had an opportunity here not to engage in this. You had an opportunity to withdraw. You chose not to. And therefore, I don't think your compulsion defense is appropriate. I would still argue that with that, you've eviscerated compulsion because I can't come up with a scenario other than the extreme circumstance where an individual is literally holding a weapon of some sort or a gun to the head of the defendant where you could say that they didn't have a chance to withdraw. I mean, if they bring the gun down, then here we are. So I really think the defense of compulsion exists. It exists for a reason. It's pretty important. It gives IPI instructions on it. So for it to continue to exist, I believe we have to have that. And People v. Blake, we refer to that in the third district where the IPI instruction was clear and did not require further clarification by supplemental instruction. And the jury asked the judge to explain whether the threat under the compulsion defense had to be continuous. And the trial court responded, and I believe properly, you've been given your instructions, and the instructions are there. That is for you to determine. And there are no gaps. There are no words that are left out. And it is full and complete as it is. Let me just point out, Mr. Drew, that the statute on compulsion includes if he reasonably believes death or great bodily harm will be inflicted upon him or her or upon his or her spouse or child. Right. So, I mean, and the one that was rejected that you submitted didn't include that. Correct. It could have been included. It did not include that at that time. And the defense of compulsion has that additional argument that can be made at the time as well. Thank you. Ms. McCormick. Your Honors, counsel, I'm Rebecca McCormick, arguing for the people. The court below had before it that some slight evidence that required giving this instruction of compulsion. But the court below also had before it facts that in some instances the court, the appellate court has said, did not warrant giving an instruction. Facts being that the defendant had ample opportunity to exit the enterprise or leave the enterprise. The court, in its discretion, decided to give an instruction that was a correct statement of the law. And it's not a new statement of the law. It's been like this since 1978, which I think is one of the oldest cases cited in the people's brief. So the review of the court's exercise of its discretion is, did the instruction that was modified accurately state the law, clearly state the law, without argumentation? And it did. It was only a slight modification to add the defense of compulsion is not available to one who passes up an opportunity to withdraw from the criminal enterprise. And the court had before it evidence that was put on in the people's case and the defendant's statements themselves, which indicated he had an ample opportunity to withdraw from the criminal enterprise. What do you say to the argument that IPI instructions as a general proposition should not be altered unless there's good cause to do so? That's true. What is the good reason here to add what Mr. Drew considers an extra burden? Whether it is an extra burden or not, I'm not saying. But why was it important in this case for the state to submit the extra language? I think it was important in fairness to the defendant that he should get the compulsion instruction. But it was important that the jury accurately understand the law. And I know trials are not all about fairness to the defendant. It's also about fairness to the people and accuracy in the statement of the law. And so, yes, it was important in these circumstances. I can't imagine more egregious circumstances. I'm not sure I understand. It seems like in any situation where you have two individuals, whether they're robbing a bank or burglarizing a home, the argument could always be made that there was compulsion. So is the state saying that they don't like the definition of the IPI? Are they saying that this additional language is needed in all cases to clarify the IPI? No. I'm not understanding what the specific circumstances were here in the record. Right. Your Honor, it is not every case that would warrant this. This particular case on these facts did because the evidence showed that the defendant was dropped off by FIKE at a vacant house and left alone for some long time. And he had with him a cell phone. He had with him a cell phone that he had purchased. He had with him his police radio and his weapon. And I agree with you. And that's my question, is they use the word imminent in the IPI. You would probably agree that the fact that you have this long period of time and you're buying cell phones, even carrying a gun, is not imminent. So I guess that's what my question is, is if imminent accurately defines it, why do we need this language? It has to do with being fair to the defendant whose testimony was to the effect that he thought his family was being framed. The defendant doesn't think you're being fair. I know, but the court below was trying to be fair and accurate. And it did not commit any abuse of discretion by adding this language to the compulsion instruction, the definition. And it did so because it had to fashion. It's the court below. It's there in the court below's duty to accurately instruct the jury as to the law. But the state submitted this instruction. Correct, correct. I mean, the court didn't make it up on its own. Well, no, but it's the court's job. I understand. To accurately instruct the jury. And it's the court's job to reject or accept. And it's the court's exercise of discretion that we're looking at. And it's not every case that this would be appropriate at all. It is under the unique facts of this case that it's appropriate because of the long periods of time in which the defendant. And it is cases that are cited in the people's brief refer to, and this is People versus Colon, where after the event, the defendant could have notified the police with safety at any time but failed to do so. So for that reason, the occurrences that happened after the robbery was completed, it's also relevant. Because he could have, at that point in time, still abandoned the enterprise in that he could have done something to get Fyke, believe in history, get Fyke arrested. And he could have, at that point in time, the money could have been restored to the bank. So what happened afterwards is very relevant. But before the robbery, he was alone for a great deal of time. He had his cell phone, he had the cell phone he purchased, he had his police radio, and he was armed. He could have said, look, this is what's going on. He could have called the police, he could have asked for assistance, it could have been FOIL. They could have called Georgia, where his family was, and they could have gotten protection for his family. It's just not. But that seems to go to the word imminent. It does. I can see a prosecutor arguing before the jury everything that you've said, and then saying that is not imminent, and therefore you can't find for the defense of compulsion. So I'm still having trouble understanding why the IPI was changed. I agree with everything you're saying about imminent. Go ahead. As in Carini and Goodman cited in Fyke's brief, it does go to explain to the jury what the term imminent means. And it's not imminent if he could escape, if he could exit from the enterprise. It could be argued that it would make more sense to amend it in this way if the evidence was he only had one opportunity to escape. You know what I mean? Yeah, yeah. I understand it would be closer. But we're looking at this judge's exercise of his discretion based on these facts. And so the judge did what he could to correctly instruct the jury. And they were correctly instructed. It has always been the law, or at least as far back as 1978, that if you have an opportunity to exit or to leave off from the incremental enterprise, you can't. It's not available to you. But the court was trying to give the defendant his defense of compulsion and trying to give the defendant the opportunity for the jury to weigh the capability of what he said about it versus what Fyke had to say about it versus what his earlier statements had been, which were to the effect that his family was in Georgia where he knew they were safe. I mean, the defendant made his own contradictory statements. One of them was that he knew they were down in Georgia where he knew they were safe. So the defendant has not demonstrated any abuse of discretion or that he was called to some burden that was not encompassed by the definition of the defense of compulsion. And he doesn't claim that the instruction is incorrect. And it's not argumentative. I think the defendant is claiming, maybe I misunderstood the briefs, but I thought the defendant does claim this is an incorrect instruction on the law, that it places an additional burden on. Maybe I misunderstood that. I think he's arguing that it's prejudicial because it added a burden to it. He's not saying it's incorrect because the case law has been, to this point, consistent that it's not available. What he's saying is that if this was the case that, as other courts have done, that the court should have said, well, as a matter of law, you're not entitled to the defense of compulsion at all. I don't think he would have been happy with that result. No, that's why I asked him if it would have been amended to the word imminent is not, whether he would be happier with that.  I'm sorry. In any event, at the vacant house at the bank, he proceeded to fight into the bank. He was armed. He had this semi-automatic pistol with a slide back ready to fire, and he was in there for some time. He could have said under his breath immediately, you know, there's a man outside who's wanting to rob the bank. Let's lock the door. Sound the alarm. Let's call the police, but he didn't do that. Instead, he drew his weapon, and he, at gunpoint, forced all of the tellers to line up and force the other officer, the bank officer, out, and he was the one who kept his gun drawn on the tellers. Fyke, as far as we know, had no gun. Fyke testified he had no gun. He could have, and he was a trained policeman. He could have, when Fyke was busy stuffing money into the backpack, he could have tackled Fyke. I mean, there were lots of opportunities for him to withdraw from this criminal enterprise before and after, and he did not do so. Ms. McCormick, could you address the sentencing issue raised by the defendant? The defendant basically asked his court to be way. He doesn't point to any factor that the court failed to consider or any inappropriate factors that the court considered, and, you know, looking at the factors the court did consider, he certainly threatened serious harm by pointing that pistol red in the fire at those employees, at the tellers. He was the one who claimed it. He was the one who recruited Fyke. He was the one who bought the items to commit the robbery. He was the one who decided how they were going to split the money up, and he was the one who did the route. I mean, he had the major role in this crime. So comparing his sentence to Fyke is not appropriate because Fyke was just simply recruited and forced into this robbery. Now, the state makes reference to the fact that the defendant should have received a 15-year enhancement. Yes. But you have not filed a cross appeal, have you? Are you contesting? But under ARNA, it can be challenged as void at any time. I'm sorry. Your voice dropped. People versus ARNA, a void sentence can be challenged at any time. And at this point, and this court itself has a duty independent of any state's argument to correct a void sentence. And this sentence is void to the extent that the mandatory 15-year add-on was not added. How do we know that? How are we certain of that? I mean, is it possible that Judge Kimmel gave the 30-year sentence including that 15 years? You see what I'm getting at? I believe at the time the defendant was sentenced, at least at the time he committed his crime, under House Child, it had been found unconstitutional as violated of the portion of penalties clause. So the court below was probably unaware. And it was only recently, like 2012 and 2013, in which the reviewing courts, this court, the First District, and the Illinois Supreme Court has determined that the amendment to the armed violence statute cured the problem that was identified in House Child. And was that amendment done, was that passed after this crime was committed? Yes, it was. The amendment was passed in October 23rd and effective. It's an effective date. It was effective October 23rd, 2007. This defendant committed his crime on October 9th, 2008. Okay, so it was clearly in effect. So it's clearly in effect. I do not think the court below would have understood that it was, because it wasn't settled. And at this point in time, at the point he was sentenced, you know, House Child, I think, was still in effect. And it wasn't until the Illinois Supreme Court settled it in Blair in 2013 that we all have come to understand that the amendment revived the 15-year add-on. So I do not think the court below was aware of the mandatory 15-year add-on at the time the defendant was sentenced. Is there anything in the record to indicate that it was argued for or trial court considered it, rejected it inappropriately, anything in the record? No, I don't believe so because House Child was in effect and it was, it would be, I think the court would not have seen it as revived at that point in time. Now, this court can correct the void portion of the sentence by doing the 15-year add-on or, in its discretion, can remand it for resentencing. Either would be appropriate. But this defendant certainly deserved the 30-year maximum sentence that he got because he has no rehabilitative potential. He planned more robberies of banks, Royalton and Ziegler, Royalton being the town that his father lived in. He planned to commit residential burglaries, utilizing the police watch list, which would let him know which houses were going to be vacant. He planned to burglarize the residence of a former police chief who was on vacation. He planned to use a gun that he had falsely, well, that he had reported stolen, which in fact was not stolen, so it wouldn't be traceable. He simply, he has no rehabilitative potential, despite the fact that he seems to be well mannered. Let me be clear, your position is on that sentencing is you either have to add it or reverse and remand for the trial court to consider. Yes, but it's mandatory. The sentence without the 15-year add-on, to that extent, is void. And so it must be corrected. And this court and the court below would have a duty to correct it. Unless there are further questions. No, thank you for addressing that for us. Mr. Drew? And I would start with the sentencing. Yes, would you please, because you didn't have a chance to do that, and that's why I asked the state to do that. So if you would help us out there. I would assert that counsel is not correct in stating that the court didn't consider it because Mr. Websick, the state's attorney at the time of Jackson County, asked for a 40-year sentence in the Illinois Department of Corrections. And it's six to 30. Six to 30 is the sentencing guideline range, or the guideline range of the offense, and he asked for a sentence of 40 years. What was his basis for asking for that, though? Was he arguing the extended term applied for some reason? He did not state that at the time. He asked for it, but he just merely asked for 40 years. The record's silent on that, isn't it? Whether this 15-year was, and I didn't mean to interrupt you, but the record itself that you're looking at seems silent on whether the 15 years was even raised for consideration. Could you find it in the record? Well, the prosecution asked for 40 years. I asserted in mine that it should not be enhanced. But there's nothing in the record that talks about the mandatory add-on, that provision of the Armed Violence Act that I could see. I did not. I simply said that the 40-year sentence was impermissible because of the six to 30-year sentencing range that was there. But that was, I believe, the court looked at that, and I believe it was part and parcel of it because of the discussion that it shouldn't be permissible, and the prosecution asking for 40 years and not saying this is because of other factors that should add it on, which I don't believe you can get past 30 under any other way. You can get to 45 based on the 30 years plus the 15-year enhancement. So I think the prosecution arguing that and myself stating to the court, which is it doesn't specifically say that, no, but I say I don't believe that's permissible, but it doesn't specifically talk about that. But the 30-year sentence, I believe if the court had sentenced my client to 10 years, then I think we're in a position where we don't have to presume whether or not it clearly was, and it could have been. It's not even a possible sentence. But the 30-year sentence is, in fact, within the relevant portion, even with the 15-year enhancement. So that would be an appropriate sentence. So you'd be satisfied if we stuck with the 30? Well, I think my client would like to go back to 21. The court would just undo that and say, no, you get 21. You've never committed a crime in your entire life. There was some elements here of compulsion done, and you have a child and a family and been a good person otherwise in your life. You come up here arguing 30 is excessive? The state wants you to leave with 45. Yeah, I know. It's an unusual argument. They're pretty tough. Well, with the 15-year enhancements that have been imposed now, it is unusual arguments that can take place. And I think it's not cited here, but there's an individual who wanted his plea to murder taken back, and he got it and then caught double the sentence that he had before. So those things can happen under the circumstances. But here, I believe the 30-year sentence and the arguments by counsel, while not specifically saying that a 15-year enhancement must be there, I think it was argued by the request of 40 years and the request that that's not permissible to do. So I think the court considered all that at the time they did it. Now, counsel is clearly correct as to the timeline of when court decisions in 2012-2013 concerning that very issue, but I think the court was still considering it at that time. But I would like to go back briefly to the original compulsion issue. And in looking at counsel's argument as it relates to this, it doesn't say the definition of imminent. It could not be imminent. And the court asked me about that. I still would not agree with that. I don't think it would benefit my client to have any further definition of imminent, but up to the jury to decide. But it says the actual addition by the prosecution was the defensive compulsion is not available. It wasn't further trying to define imminent. It says, and the jury reads what the words say, given a copy, and it says the defensive compulsion is not available to one who passes up an opportunity to withdraw from the criminal enterprise. And I really would reiterate to the court that I really believe that because it's not defining any terms, it's saying this is what compulsion also means. Because I don't know how else you can interpret it because the plain, clear language says the defensive compulsion is not available. And had it said imminent would not include someone who had an opportunity, an imminent threat would not include someone who had an opportunity to remove themselves from the threat at some point in time, I still wouldn't agree and I would object to it. But I believe it might be closer to a proper, at least something the court could say, but not under the circumstances.  Thank you. Thank you. This time the court will be in a short recess.